## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**HOWARD LEE JUSTICE, JR.,**

     **Plaintiff,**

**v.**                                                  **Case No. 2:17-cv-02369**

**DR. HINCHMAN,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 12).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 17, 2017, the plaintiff filed his initial Complaint (ECF No. 1), asserting that he suffers from Charcot-Marie-Tooth ("CMT") disease, and had requested a wheelchair, a shower chair, and to be placed in a handicapped cell, but had heard nothing in return. On May 1, 2017, before service of the initial Complaint, the plaintiff filed another Complaint form, which the court has treated as an Amended Complaint (ECF No. 5), and which is the operative document upon which this matter is proceeding. The plaintiff also filed an Affidavit in support of his Complaint (ECF No. 7), in which he states that he requested an x-ray of his shoulder on April 24, 2017.

The Amended Complaint alleges that, on April 24, 2017, the plaintiff injured his left shoulder when he fell in his "non-handicapped approved" cell while getting out of a wheelchair that had been provided for him on April 23, 2017. (ECF No. 5 at 4). The plaintiff's Affidavit further specifies that he fell trying to get off of his toilet and back into the wheelchair. (ECF No. 7). The plaintiff requested a transfer to a West Virginia Division of Corrections' facility, for his shoulder to be "looked at," and monetary damages in the amount of $50,000. (ECF No. 5 at 5).

On November 3, 2017, defendant Hinchman filed the instant Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 12) and Memorandum of Law in support thereof (ECF No. 13), asserting that that the Complaint should be dismissed, pursuant to 42 U.S.C. § 1997e(a) and West Virginia Code § 25-1A-2(c), because the plaintiff failed to properly exhaust the available administrative remedies prior to filing this civil action, and because the Amended Complaint fails to state any plausible claim for relief against Dr. Hinchman.

By Order entered November 9, 2017, the undersigned notified the plaintiff, pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right and obligation to properly respond to the defendant's motion.

On November 28, 2017, the plaintiff filed a letter-form Response (ECF No. 18). On December 14, 2017, the defendant filed a Reply (ECF No. 19). On January 2, 2018, the plaintiff filed an unauthorized sur-reply (ECF No. 20). This matter is ripe for adjudication.

## STANDARDS OF REVIEW

### *Dismissal for failure to state a claim upon which relief can be granted*

The defendant's motion asserts that the plaintiff's Complaint should be dismissed under Rule 12(b)(6) of Federal Rules of Civil Procedure, because it fails to state a claim upon which relief can be granted against him.  Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.  However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

3

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679.

### *Summary Judgment*

Alternatively, the defendant has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (ECF No. 30-2). Where a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56. *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where

4

the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins.* Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

## ANALYSIS

### A.    The plaintiff failed to exhaust his administrative remedies prior to filing his Complaint.

The defendant asserts that this civil action must be dismissed because the plaintiff failed to exhaust the available administrative remedies prior to filing this lawsuit. The undersigned will address this threshold issue before turning to other grounds for dismissal.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ*

*Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)).  Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c).  The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief.  *Jones*, 549 U.S. at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law.  *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the

judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017)

(citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

The SCRJ, where the plaintiff was incarcerated at the time of the facts giving rise

to this civil action, is a facility operated by the West Virginia Regional Jail and

Correctional Facility Authority ("WVRJCFA"), which has a grievance procedure that is

outlined in a handbook of Inmate Rules and Procedures that is distributed to each inmate.

As noted in the defendant's Memoranda of Law, the United States District Court for the

Northern District of West Virginia has summarized the WVRJCFA's grievance process as

follows:

> Under this procedure, inmates must first submit a grievance to the
> Administrator of the facility in which they are confined. Upon receipt of the
> grievance, the Administrator may reject the grievance if it appears on its
> face to have been filed in bad faith, or if other administrative procedures
> exist that have not been utilized. If the grievance is rejected, the
> Administrator must advise the inmate of the rejection. If the grievance is
> not rejected, the Administrator may assign a staff member to investigate the
> complaint. Such staff is then required to submit a written report within
> forty-eight (48) hours. Within two days of receipt of the written report, the
> Administrator must provide a written decision which identifies the action
> taken, the reasons for the action, and the procedures that must be followed
> to properly appeal the decision. If the Administrator's response is
> unfavorable, the inmate may appeal to the Chief of Operation within five
> days of the receipt of the Administrator's decision. Upon receipt of an
> appeal, the Chief of Operations must immediately direct the Administrator
> to forward copies of all information relating to the inmate's grievance within
> two business days. The Chief of Operations may direct an investigation of
> the report be conducted and a written report be submitted within 15 days.
> Within 10 days of receiving all of the information related to the grievance,
> the Chief of Operations must provide a written decision which identifies the
> corrective action taken or the reasons for denying the grievance. If the Chief
> of Operations' response is unfavorable, the inmate may appeal to the Office
> of the Executive Director within five days of receipt of the Chief of
> Operations' response. To do so, the inmate must mail to the Executive
> Director, copies of the original complaint and all of the responses thereto.
> The Office of the Executive Director must respond to an inmate's appeal
> within 10 days of receiving all the information. Unless the inmate has been
> notified of an extension of time for a response, the inmate may move to the
> next stage of the grievance process if the inmate does not receive a response

at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

*Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at *4 (N.D. W. Va. Oct. 16, 2012) (Kaull, M.J.), *report and recommendation adopted*, No. 1:11CV108, 2012 WL 5845219 (N.D. W. Va. Nov. 19, 2012) (Keeley, J.).  (ECF No. 13 at 4-5).  The defendant emphasizes that "administrative remedies are not exhausted until all three steps of the grievance process have been completed."  (*Id.* at 6).

The defendant's Memorandum of Law further states:

> In this case, the plaintiff claims to have "put in for an x-ray and have not heard nothing.  (ECF No. 5 at p. 27).  He does not claim to have completed all three steps of the grievance procedure.

> In fact, if his injury was sustained on April 24, 2017 and he filed this lawsuit on May 1, 2017, it would have been impossible for him to exhaust his administrative remedies because he would not have had enough time to do so before filing this claim.

(*Id.*)  Thus, the defendant asserts that it is apparent from the face of the Complaint that the plaintiff failed to properly exhaust his administrative remedies and, therefore, the Complaint must be dismissed.  The undersigned agrees.

This civil action was initiated before the fall that is the subject of the Amended Complaint even occurred.  In the initial Complaint, the plaintiff simply stated that he had requested handicapped accessible equipment such as a wheelchair and a shower chair and placement in a handicapped approved cell.  The Amended Complaint, which was filed on May 1, 2017, indicates that the plaintiff had been provided the wheelchair on April 23, 2017, and then suffered the subject fall on April 24, 2017.  Accordingly, the plaintiff could not have completely exhausted the three-step administrative remedy process prior to filing the Amended Complaint, and this civil action should be dismissed on that basis alone.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to properly exhaust the available administrative remedies prior to filing this civil action and, thus, this matter must be dismissed pursuant to 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2(c).

Nevertheless, there are other bases for the dismissal of this civil action which the undersigned will also address.

### B. The plaintiff has not stated a plausible federal constitutional claim against Dr. Hinchman.

The defendant's motion further asserts that the Amended Complaint fails to state a plausible claim for relief against Dr. Hinchman because Dr. Hinchman did not treat his shoulder injury and, at any rate, the plaintiff's medical records indicate that an x-ray was taken, which indicated that the plaintiff suffered no injury to his shoulder.  (ECF No. 13 at 3).

The Amended Complaint does not allege any specific conduct by Dr. Hinchman. Rather, it summarily lists Dr. Hinchman as a defendant, and then asserts that the plaintiff had requested the handicapped accessible equipment, had only received access to the wheelchair, and suffered a fall.  His accompanying Affidavit indicates that he had requested an x-ray, and asserts that this incident would not have happened if he had been placed in a handicapped accessible cell.  (ECF No. 7).

To the extent that the plaintiff could be asserting a federal claim against Dr. Hinchman, such a claim would arise, if at all, as a claim of deliberate indifference to a serious medical need under the Eighth Amendment of the United States Constitution. The vehicle for raising a violation of the Eighth Amendment is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

It is unclear whether the plaintiff was a pre-trial detainee or a convicted prisoner, at the time in question. If he was a pre-trial detainee, his constitutional claim concerning inadequate medical treatment arises, if at all, under the due process clause of the Fourteenth Amendment, and not under the Eighth Amendment prohibition against cruel and unusual punishment, which is applicable to convicted prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992). However, the inquiry under both amendments is essentially analogous: whether the defendant exhibited deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), *overruled on other grounds by* Wilkins *v. Gaddy*, 559 U.S. 34 (2010). Thus, courts often rely upon Eighth Amendment precedent when analyzing such claims by pre-trial detainees.

As a contracted medical provider for the WVRJCFA, which is a state agency, the deliberate indifference standard is applicable to the conduct of Dr. Hinchman, who may be considered to be acting under color of state law.  *West v. Atkins*, 487 U.S. 42 (1998).  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness*." Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases).  "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.  *See id.*  Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.  *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

The defendant's Memorandum of Law asserts that the plaintiff's Amended Complaint neither pleads nor meets the legal threshold for a viable deliberate indifference claim.  (ECF No. 13 at 6-8).  The plaintiff must demonstrate that the defendant subjectively responded with deliberate indifference to his serious medical need.  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).  Negligence is insufficient to state a federal constitutional claim.  *See Wilson*, 501 U.S. at 305.  Thus, a constitutional violation does not occur unless the medical provider's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

12

*Miltier v. Beorn*, 896 F.2d 843, 851 (4th Cir. 1990).  Further, a mere disagreement between the inmate and the health care provider over the type or extent of medical care is insufficient to establish deliberate indifference.  Moreover, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary.  *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).  In light of these factors, the defendant's Memorandum of Law asserts that:

> In the case *sub judice*, there is simply no evidence that Dr. Hinchman was deliberately indifferent to the plaintiff's serious medical need.  First, the medical need was not serious because the x-ray performed on May 5, 2017 revealed no evidence of any medical need at all.  His left shoulder was normal.  *See* Medical Record of Musculoskeletal Complaint dated May 7, 2017 and Radiology Report, dated May 8, 2017, attached hereto as **Exhibit A**.

> Secondly, Dr. Hinchman was not deliberately indifferent to his medical need, as he did not see, examine, or place any orders for either x-rays or treatment.  *See* Affidavit of Harry David Hinchman, M.D., attached hereto as **Exhibit B**.  This does not state a cause of action under the Eighth Amendment.  *See Smart* [*v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)].

(ECF No. 13 at 8).  At most, the defendant asserts, the plaintiff's allegations and the evidence of record demonstrates a disagreement between the plaintiff and his health care provider concerning the necessity and timing of treatment.  (*Id.* at 9).

The plaintiff's Response to the defendant's motion fails to address the merits of this argument.  Rather, the Response indicates that the plaintiff was subsequently transferred to the Huttonsville Correctional Center, but that he still wished to pursue his claim for monetary damages.  (ECF No. 18 at 1).  The plaintiff's Response and sur-reply further assert that Dr. Hinchman was aware that the plaintiff has CMT and of his need for equipment to assist his movement and access to a handicapped cell, which he had not been provided at the time of his fall.  (*Id.* at 2-3; ECF No. 20).

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not sufficiently alleged or prove that the conduct of Dr. Hinchman rose to the high level of deliberate indifference to a serious medical need and, thus, the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

### C.    The plaintiff has not complied with the West Virginia Medical Professional Liability Act.

To the extent that the plaintiff's Amended Complaint and Affidavit can be construed to be claiming negligence in the medical care rendered to him by Dr. Hinchman, or other medical personnel at the SCRJ, his cause of action is governed by the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.*, specifically, W. Va. Code § 55-7B-6(b), requiring pre-suit notification and a screening certificate of merit. *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006). As noted in the defendant's Memorandum of Law, West Virginia Code § 55-7B-6 provides, in pertinent part, as follows:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

> (b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider*, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and *shall* state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was

14

breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A *separate screening certificate of merit must be provided* for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. . . .

W. Va. Code § 55-7B-6 (emphasis added in the defendant's brief). (ECF No. 13 at 9-10).

The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). As recently noted by the Supreme Court of Appeals of West Virginia, "[w]here the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e), the Act applies regardless of how the claims have been pled." *Minnich v. MedExpress Urgent Care, Inc.-West Virginia*, 796 S.E.2d 642, 646 (2017) (quoting *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 453 (2007)).

The defendant's Memorandum of Law further asserts, "[n]owhere in his Amended Complaint does the plaintiff allege compliance with the mandatory notice and screening certificate of merit requirements of the MPLA." (ECF No. 13 at 10). The defendant further asserts that these requirements have been determined to be mandatory for medical malpractice or negligence claims filed in federal courts. *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished

decision).  (*Id.* at 10-11).

The plaintiff has not disputed either the applicability of the MPLA to his case or his failure to comply with the MPLA requirements.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that dismissal of the plaintiff's allegations of medical negligence in the Amended Complaint is required because the plaintiff failed to meet the requirements of the MPLA, which clearly appear to apply to his negligence claim.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 12), and dismiss this civil action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, 42 U.S.C. § 1997e(a), W. Va. Code § 25-1A-2(c), and W. Va. Code § 55-7B-6.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of

Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

May 2, 2018

Dwane L. Tinsley
United States Magistrate Judge

17